In the Matter of the Estate of Oscar J. Breault, Deceased.
Hirsch E. Soble, Petitioner-Appellee, v. William Joseph Breault and Bonnie Jo Ellen Breault, Minors by Florence B. Breault, Their Next Friend and Guardian, Respondents-Appellants.

Gen. No. 49,883.

First District, First Division.

October 4, 1965.

248

John J. Yowell and G. Kent Yowell, of Chicago (Yowell, Long, Macdonald & Yowell, of counsel), for appellants.

Hirsch E. Soble, pro se, of Chicago, appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Kathryn M. Breault died in August 1952 leaving a last will and testament which devised and bequeathed the bulk of a substantial estate to Harold L. Feigenholtz and Richard Dahm, as trustees, for the benefit of her son, Oscar J. Breault, during his lifetime. The will also bestowed a general testamentary power of appointment over the trust assets in the following manner: "Upon the death of my son, Oscar J. Breault, the property of the trust estate shall be distributed according to the provisions and terms of the Last Will and Testament of my son, Oscar J. Breault, and if he shall fail to execute a Will or such Will should not be admitted to probate, I hereby direct distribution of said estate in the following manner:" etc., naming

three charities which were to share equally. Oscar died July 16, 1959. His will dated November 18, 1954, was admitted to probate on October 14, 1959. (In re Estate of Breault, 29 Ill2d 165, 193 NE2d 824). He was married three times, his third wife, Estelle, surviving him. William Joseph Breault and Bonnie Jo Ellen Breault, minor respondents, are children of his second marriage. Kenneth Breault, son of the first marriage, also survived him.

Feigenholtz qualified as executor under Oscar's will which, after directing payment of debts and taxes, contained in pertinent part: "I give, devise and bequeath all the rest, residue and remainder of my property, of whatsoever character and wheresoever situate, be it real, personal or mixed, belonging to me at the time of my death, *or over which I have power of disposition,* to Harold L. Feigenholtz of Chicago, Illinois, and his successor or successors as trustee for and upon the following trusts, purposes and conditions. . . ." (Emphasis ours.) Subsequent provisions directed that the income from the trust should be paid to Estelle during her life, and upon her death in equal shares to Oscar's three children until the youngest should reach the age of 40 years, at which time the corpus was to be distributed between the children (5% each) and a charitable institution (85%). At the time of Oscar's death, when his will took effect, the trust estate over which he had been given a power of appointment by his mother's will totalled in excess of $400,000 and included residential property in Florida which had been purchased with trust funds for Oscar's use.

The Probate Court held that Oscar's will manifested an intention on his part to appoint the trust assets of his mother's estate to his own estate, thus making the appointive property assets of his own estate which

250

necessarily had to be inventoried and accounted for by his executor.

An appeal to the Illinois Supreme Court was taken regarding this ruling and various other orders. The Supreme Court, in the appeal In re Estate of Breault, 29 Ill2d 165, 178, 193 NE2d 824 (1963), said:

> "Considering the will [Oscar's] in its entirety we do not find the requisite intent of the donee to make the property a part of his estate for all purposes. This being so, the appointee takes from the estate of the donor as in the normal case. For this reason, it follows that the orders of the probate court were in error insofar as they ordered the appointive assets to be surrendered to and inventoried in Oscar's estate. . . ."

The matters before us on this appeal arose when petitioner-appellee, Hirsch E. Soble, petitioned the Probate Court in the pending proceedings involving Oscar's estate, to enter an order for partial allowance of fees earned by him as attorney for the executor, payable out of the Kathryn M. Breault trust assets. Petitioner described in detail the legal services he performed for and on behalf of the executor alleging that they were reasonable and necessary; that Oscar's estate is small and hopelessly insolvent; that the fees constitute an equitable charge against the Kathryn M. Breault trust assets; that the trustees are made parties and that an order may be entered against them in the proceedings to pay a partial allowance, as the court may deem proper, out of the assets of said trust.

Respondents answered the petition claiming that the services charged were not made on behalf of and beneficial to the estate; contesting the right of the probate court to order an executor's attorney to have his fees paid out of property not part of the probate estate,

and which was the subject matter of a prior pending declaratory judgment and accounting action in the federal court; and denying the insolvency of Oscar's estate.

Respondents, further answering, alleged that the Supreme Court (In re Estate of Oscar J. Breault 29 Ill2d 165, 193 NE2d 824 (1963)), held that the assets of the Kathryn M. Breault trust were not appointed to Oscar's estate; that they could not be charged with costs of administration of that estate; that the federal court had jurisdiction of the trust assets in the prior pending suit for declaratory judgment and accounting; that there were questions at issue in the federal court as to whether the trust assets were properly subject to a power of appointment by Oscar, and if so, whether his will was a product of undue influence or otherwise invalid; that the petition failed to show any benefit to the estate, and that the services performed in fact were detrimental to the estate.

Upon a full hearing thereof the trial court entered an order finding that it had jurisdiction of the parties and the subject matter; that the allegations of the petition were true; that the estate was small, insolvent and unable to pay fees; that petitioner's services were of great value and benefit to the trust estate under the last will and testament of Kathryn M. Breault, deceased; that the successful defense of a federal suit instituted by Sylvia Jackson against Oscar's estate for an alleged assault and battery committed during his lifetime prevented subsequent recourse against said trust estate; that the executor had a statutory duty to defend Oscar's exercise of the power of appointment of said trust assets; that the legal services rendered by petitioner as the executor's attorney in defending the will contest in the Federal Court, and in the suit for declaratory and equitable relief, and in defending against plaintiff's petition for removal of the executor,

252

and against their objections to the executor's amended first account and to the amount and nature of the executor's bond, and, in prosecuting the executor's appeal to the Supreme Court were all directly related to and reasonably and necessarily incurred in the performance of the executor's statutory duty and that the legal fees should fairly be charged to the Kathryn M. Breault trust estate regardless of the outcome of said litigation; that a fair and reasonable value of petitioner's legal services to February 6, 1964, was $67,630; and that petitioner was entitled to an order against the trustees to pay out of the assets of the trust a partial allowance of $45,000 on account of his legal services.

The court ordered Feigenholtz and Dahm as such trustees to pay out of the assets of the said trust estate to petitioner the sum of $45,000 as a partial allowance of his fees, and that in default of such payment execution issue. The court ordered that upon payment of said sum the trustees shall be entitled to take credit therefor in their account and accountings.

Respondents appeal from the order. The services rendered by the petitioner, and the reasonable value thereof, were not disputed at the trial level and are not questioned in this appeal. But respondents contend that the petition did not state a cause of action for the enforcement of a lien; that the court had no authority to order that the attorney for the executor be paid fees out of property which is not part of Oscar's estate; that the probate court erred in entertaining a petition for fees to be paid out of non-probate property which was the subject matter of a prior suit for a declaratory judgment and accounting in the federal court; that it was error to allow fees to the attorney for services which were of no benefit to the probate estate; and that it was error to undertake to find the probate estate insolvent in the absence of any ac-

253

countings by the executor and when Oscar's estate had an unliquidated claim against the trustees of Kathryn's trust for undistributed income.

Initially, we consider respondents' contention that there was no proof or finding that the services were beneficial to the estate. They argue that the petitioner was first employed by Feigenholtz in his individual capacity as well as executor, and that it was for Feigenholtz in his individual capacity that the services had been performed.

■ ■ It is well established that the probate court had the right to allow an executor credit in his account for reasonable attorney's fees for aid in enabling such officer properly and efficiently to perform the duties of his office. In re Gilbert's Estate, 319 Ill App 15, 19, 48 NE2d 567, 569 (1943). Moreover, this right of the executor to procure legal services and grant compensation for such is expressly recognized in Illinois by Statute. Ill Rev Stats 1963, c 3, § 337. The attorney's fees should be allowed commensurate with actual services rendered necessary to the orderly and prompt closing of the estate and protection of its assets. In re William's Estate, 324 Ill App 584, 59 NE2d 333 (1945). However, where the services are not in the interest of the estate but rather in the interest of the executor, counsel's fees will be rejected. (James, Ill Probate Law and Practice, Vol 5, pp 510, 511).

Whether or not petitioner's services in this case were in the interest of the estate, therefore, is a material issue. Section 93 of the Probate Act imposes upon the executor the duty to defend Oscar's will including his testamentary exercise of the power of appointment. That section reads as follows: "It is the duty of the executor or the administrator with the will annexed to defend a proceeding to contest the validity of the will. The court may order the executor or administrator

254

with the will annexed to defend or prosecute an appeal from the decree. In the event of the failure or refusal of the executor or administrator with the will annexed to defend the proceeding or to defend or prosecute an appeal when ordered to do so by the court, the court upon its motion or on application of any interested party may appoint a special administrator to defend or appeal in his stead." Ill Rev Stats 1963, c 3, § 93. The actions filed by respondents in the Federal Court contested the validity of Oscar's will and made Feigenholtz, as executor of the estate, party defendant. He became duty bound to defend by virtue of section 93. Likewise, the Sylvia Jackson suit filed in the Federal Court required the executor to defend and protect the assets of Oscar's estate. The prior probate court orders, reviewed on appeal to the Supreme Court (29 Ill2d 165), involved matters regarding the executor's duties and obligations; the appeal was therefore in the interest of the estate. The additional federal action filed by these respondents for a declaratory judgment and accounting raised the issues of construction of the wills and trusts in both Kathryn's and Oscar's estates. Respondents in that action made Feigenholtz a party defendant in his official capacities as executor and as trustee in both estates, and although they also named him individually therein, we do not consider such additional inclusion to constitute his appearance in the cause as being solely in his individual behalf.

It is thus apparent that the legal services of the petitioner on behalf of the executor related to litigation that sought in one way or another to subtract from the trust property, to destroy the effect of Oscar's exercise of the power of appointment and to capture Kathryn's trust estate. It was in this light that the trial court concluded that "the legal services rendered by petitioner . . . were all directly related to and reasonably and

necessarily incurred in the performance of the executor's statutory duty," and that this was true "regardless of the outcome" of the federal litigation.

We do not agree with respondents' contention that fees are inappropriate until the questions pending in the Federal Court are settled. The disposition of those questions is not determinative of petitioner's right here to partial interim legal fees. It is true that prior to the Probate Act the executor who was defeated in a will contest ran the risk of substantial personal financial loss for his efforts in defending the will. Whether the executor is still personally liable for the expenses of an unsuccessful defense of the will under the Probate Act depends upon the interpretation given to section 93 of the Act. An astute and thorough analysis of section 93 is set forth in 44 Ill Bar Journal, pp 28, 32, 33 (1955):

> The executor is given no discretion as to whether he will defend the suit, but he must defend it in all events. Surely the statute contemplates that he make a reasonable attempt to *successfully* defend the suit. Since he could not ordinarily expect to make a successful defense without hiring attorneys and expert witnesses and incurring such other expenses as are necessary to present his case in the best light, it would seem that the statute makes it his implied duty to incur such expenses. If this is a correct interpretation, it is difficult to believe that the legislature expected the executor to pay a substantial part, or even a small part, of the expenses of making the defense from his own pocket. Any such interpretation would completely defeat the intent of the statute, because an executor, faced with the prospect of being held personally liable for the expenses,

would naturally tend to economize to such a degree that the will would not receive an adequate defense. . . . The fact that the defense turns out to be unsuccessful should not affect this result in the slightest degree, because the duty imposed upon the executor is to defend the suit to the best of his ability, not to win it. He cannot possibly know the outcome at the time he performs his duty of making defense to the action.

■ ■ In the absence of bad faith, therefore, an attorney's fees in defending the will and prosecuting an appeal should not depend on the outcome of the litigation. Respondents rely on the case of In re Estate of James, 10 Ill App2d 232, 242, 134 NE2d 638 (1956). This case is not applicable to the facts in the case at bar, and indeed serves to highlight the rule that in the absence of bad faith attorneys' fees for such services should be awarded. In the James case the court observed that "while there is a duty on the part of the executor to defend the will and appeal if necessary, there is no duty or right on the part of the executor, to involve the estate in unnecessary litigation or to pursue an issue at great cost to the estate, *where the executor has reasonable grounds to believe that the decree finding the will invalid by reason of undue influence was proper, as in this case.*" (Emphasis ours.) The case involved an appeal from a lower court decision finding the will invalid by reason of undue influence. The court, on page 243 thereof, said: ". . . [i]t further appears that the same attorney who now asks attorney's fees for appealing the judgment of the circuit court in the will contest case to the Supreme Court, was the same attorney who drew up the will, tried the case twice in the circuit court on the question

257

of the validity of the will, and was fully conversant with every detail of the transaction."

In the instant case there is no evidence of bad faith on the part of the executor. To the contrary, the Supreme Court found "neither waste, wilfulness nor bad faith." In re Estate of Breault, 29 Ill2d 165, 180, 193 NE2d 824. Even if respondents' mere charge of undue influence against the executor were tantamount to evidence of bad faith on his part, it would not affect petitioner's claim for fees since there is no proof or even allegation that petitioner had anything to do with the execution of Oscar's will, or knew anything about it until he was engaged as special counsel to defend the will contest. The executor has the right to employ counsel and under section 287 of the Probate Act, even if the letters of an executor or administrator are revoked, "all acts done by him according to law prior to the revocation of his letters are valid." Ill Rev Stats 1963 c 3, § 287.

■ The case of In re Estate of Yoon, 20 Ill App2d 343, 156 NE2d 217 (1959), sustained an award of fees to the administrator's attorneys for services performed prior to the removal of the administrator and the revocation of his letters which were held to have been procured by false pretenses and fraud. The appellant's theory in that case was that, (pp 347, 348): . . . "the right of Sun's attorneys to claim any fees out of the estate ended when the probate court found that Sun had obtained his appointment as administrator by false pretenses, fraud and misrepresentations practiced by him on the appellant; that the fraud and false pretenses had vitiated Sun's appointment ab initio; that the fees of the attorneys for the administrator are chargeable directly to the administrator but are usually paid out of the estate; that since the probate court had found that Sun was in fact not legally appointed administrator of the estate he cannot charge

any of his attorneys' fees to the estate; that Sun could not charge any attorneys' fees to the estate which were incurred in resisting his removal as administrator . . . . " The court, in rejecting appellant's argument, relied on the effect of section 287 of the Probate Act.

> We are aware that in other jurisdictions it has been held that any act done by the administrator when his appointment is vitiated by fraud is void, but we hold that section 287 of the Probate Act was passed for the purpose of avoiding the confusion and chaos which might result if such a rule would be carried to its logical conclusion. The acts of an administrator performed prior to the revocation of his letters are by statute made valid. If he retains an attorney during that period and the attorney performs services which are beneficial to the estate, a proper fee can be allowed by the court against the estate. (p 351).

The court then made the following observation, (p 352): "Prior to the Probate Act an attorney employed by the personal representative of a decedent had no personal claim against the estate for services rendered the estate, but had to look for compensation to the personal representative in his individual capacity; but under the Probate Act providing that an attorney for an executor or administrator shall be allowed reasonable compensation for his services, the attorney has a right to present in his own name a claim for services rendered." See also 19 ILP Executors and Administrators, sec 119, citing section 337 of the Probate Act par 491, chap 3; In re Gilbert's Estate, 319 Ill App 15, 48 NE2d 567.

Respondents cite Hockersmith v. Cox, 407 Ill 321, 95 NE2d 464 (1950), as determinative of their contention. We deem it inapplicable. In the Hockersmith case the executor unsuccessfully defended the will and at the

259

conclusion of the trial moved the circuit court to tax the costs, including his attorney's fees, against the estate. The trial court denied the motion and the Supreme Court affirmed. Nowhere in the opinion of that case was any mention made of section 93 nor of the fact that said section required the executor to defend the suit and, presumably, to hire an attorney for that purpose. The circuit court based its decision on section 18 of the Costs Act which permits courts of equity to exercise their discretion in awarding costs. The court stated that its decision was in harmony with several cases holding the executor personally liable for costs where he makes an unsuccessful defense of a will contest. All of the cases cited therein were prior to the Probate Act. The Yoon opinion, however, was handed down nine years after the Hockersmith case and we therefore believe that Hockersmith can be confined to the fact situation actually before the court in that particular case. It should be noted that in the Hockersmith case the executor was the only person who would have benefited from a decree in favor of the will, and that his defense of the will was therefore primarily in his own interest. In the case at bar, although respondents contend that Feigenholtz is a beneficiary, we do not regard him as such, and under any analysis he could not be considered to be the only beneficiary.

██ ██ We, therefore, find that the probate court did not err in finding that petitioner's legal services were all directly related to and reasonably and necessarily incurred in the performance of the executor's statutory duty to defend and execute Oscar Breault's will. We hold that when an executor or administrator in good faith retains an attorney and that attorney has performed services on behalf of the estate, such attorney is entitled to reasonable compensation re-

gardless of the outcome of the litigation or the fact that the executor is eventually removed.

Next, we consider respondents' contention that the Probate Court erred in finding Oscar's estate insolvent in the absence of any accountings by the executor and when the estate had an unliquidated claim against Kathryn's trustees for the undistributed income.

The Supreme Court (29 Ill2d 165, 179) held that Oscar's estate had a claim against the trustees for any income undistributed to him at the time of his death, and was entitled to an accounting from the trustees for the period extending from the date of the third and last trustee's report approved by Oscar in his lifetime to the date of his death. But that court also held (p 180) that the respondents "have bitterly attacked the administration of the Kathryn Breault trust and have sought to claim an accounting running from the inception of the trust . . . (T)hese matters go beyond . . . the jurisdiction of the probate court and that appellees [respondents] are not without a remedy or a tribunal to pursue such claims should they so desire." We assume, from the record before us, that respondents thereafter amended their federal action for declaratory judgment and accounting accordingly, because the amended Count II thereof filed after 29 Ill2d 165 seeks, in their behalf, such complete accounting. Such final accounting by their own allegations removes the latter claim from the possible assets of Oscar's estate.

In the probate court hearing on said petition for fees, testimony was adduced that the assets of Oscar's estate consisted of some old guns, fishing reels, camera and field glasses, all valued at $455; and a boat for which there was an offer of $12,000 but subject to a chattel mortgage securing a note for $20,000, representing monies loaned by the trustees to Oscar for

the purchase of the boat. The fourth account of the trustees of Kathryn's estate covering the final period in question was presented at the hearing. Although not approved, it disclosed that the trustees claimed $12,539.67 due from Oscar's estate besides advances and taxes paid by the trustees subsequent to his death and their claims allowed in the estate which still remained unpaid. During the proceedings petitioner attempted several times to establish the financial status of Oscar's estate but counsel for respondents objected on the ground of immateriality because he argued petitioner was requesting an order for partial fees against the appointive assets which he said were not part of Oscar's estate.

In this regard the record discloses the following colloquy having taken place:

> Mr. Yowell: Counsel is asking for fees out of the trust. He is not asking for fees out of the estate. What is the difference whether it is insolvent or not? He is asking to be paid out of the trust.
>
> The Court: The estate is insolvent? There are the inventory and claims filed.
>
> Mr. Yowell: We won't concede it, Your Honor, because counsel has talked about some accounts that have been filed here, but there has been no hearing on them and the court hasn't approved them.
>
> The Court: That's right.
>
> Mr. Soble: If he doesn't concede it, I'd like to ask these questions. May I, Your Honor?
>
> The Court: All right. I will sustain further objections.
>
> Mr. Soble: Your Honor, they don't concede it and I offer to prove it by the witness that the

262

Probate estate is small, insolvent and does not have the money.

The Court: I think you have satisfied me that it is. Go ahead. I will be patient for a little while longer.

 Since respondents objected to the introduction of additional proof, they cannot complain of the lack of it. They argued the immateriality of proof as to the solvency of the estate, and are now estopped from raising this issue as a crucial one. It is true that petitioner is asking fees out of the trust assets, and not out of Oscar's estate. But, in any event, the Probate Court, from the facts before it, had sufficient grounds to sustain its finding that the estate was insolvent and unable to pay the petitioner's fees. It did not err in this regard.

Oscar's estate, being insolvent, is unable to pay these charges of administration. The question thus posed is whether payment of these expenses may properly be charged to the nonprobate property viz.; the appointive trust assets.

We have discussed earlier the fact that the Probate Act imposed upon the executor the duty to defend and execute Oscar's will. The will included his testamentary exercise of the power of appointment. It is, therefore, clearly established that petitioner's services not only related to the defense of Oscar's testamentary disposition, but were also directed toward preventing the capture of the trust estate. That petitioner's efforts redounded to the benefit of the intended beneficiaries of the appointive assets (that is, the named appointees) is indisputable. That petitioner's services were of benefit to the estate of Oscar, the donee of the general power of appointment, in that petitioner sought to establish the validity of Oscar's testamentary disposition, is likewise a matter not open to dispute.

263

■ The general rule in Illinois is that the exercise of a general power of appointment by the donee will subject the property passing by virtue of it to the claims of the donee's creditors to the extent that his own property is inadequate to pay them. See 1950 University of Illinois Law Forum p 384. The rule that appointive assets are treated in equity as assets of the donee's estate for the payment of his creditors applies also to administration expenses. In 3 Restatement—Property (Future Interests-Powers of Appointment) (1940) sec 329, pp 1865, 1866, it is stated that:

> (C)laims against the donee's estate include debts owing by him at the time of his death, expenses of administration and succession and estate taxes. . . . Ordinarily, where debts and administration expenses do or may exceed the donee's owned property, . . . the trustee should deliver all appointed assets to the personal representative, who then has the duty, after exhausting other available property, to use so much of the appointed assets as may be necessary to pay debts and administration expense, and to distribute the balance to the appointees.

It is quite true, as respondents point out, that the Restatement expressly recognizes that the appointive property is subject to the creditors of the donee only when there has been an effective exercise of the power of appointment. Sec 329 of Restatement p 1864. Respondents thus assert that, for this reason, we must await the federal court's determination as to whether or not there was an effective exercise of the power.

We do not, however, find substance in this contention, for it is on this point that the rule in Illinois departs from that set forth in the Restatement. In this state the appointive assets are subject to the creditors of the donee of a general power so long as the

264

power is exercised, and notwithstanding the fact that the exercise is later determined to be defective. The rule was laid down in the frequently cited case of Gilman v. Bell, 99 Ill 144, (1881) wherein the court said:

(I)t is insisted, that, conceding it to be a mere naked power of appointment in favor of himself, in favor of creditors he should be compelled by a court of equity to so appoint, or be treated as the owner, and the property subjected to the payment of his debts. The doctrine has been long established in the English courts, that the courts of equity will not aid creditors in case there is a non-execution of the power. But where there has been a defective execution, the court will supply the defective execution of the power in favor of a purchaser, creditor, wife or child. . . . And it has been held that where the power has been executed in favor of a volunteer, the court will seize the fund and apply it to the satisfaction of the debts of the donee of the power. . . . Nor are the distinctions entirely without reason. No title or interest in the thing vests in the donee of the power until he exercises the power. It is virtually an offer to him of the estate or fund, that he may receive or reject at will, and like any other offer to donate property to a person, no title can vest until he accepts the offer, nor can a court of equity compel him to accept the property or fund against his will, even for the benefit of creditors. If it should, it would be to convert the property of the person offering to make the donation to the payment of the debts of another person. Until accepted, the person to whom the offer is made has not, nor can he have, the slightest interest or title to the property. So the donee of the power only

265

receives the naked power to make the property or fund his own. And when he exercises the power, he thereby consents to receive it, and the title thereby vests in him, although it may pass out of him eo instanti, to the appointee. And when the appointee is a volunteer, the court holds that he, by the appointment, endeavors to misapply his property to defraud his creditors,—that he must be just before he is generous. (pp 149–151). Also see 59 ALR 1510.

The principle was reaffirmed in the case of Northern Trust Co. v. Porter, 368 Ill 256, 13 NE2d 487, (1938), although in that case the court found that "the defendants are not creditors of the donee so as to come under the rule of Gilman v. Bell." (p 267).

 Thus it is the rule in this state that where a person has a general power of appointment, and exercises that power, the property appointed is deemed, in equity, part of his assets, so far as his creditors are concerned, and subject to their demands, if his estate is inadequate, in preference to the claims of his voluntary appointees. See 121 ALR 803. Even if it should be eventually determined that the appointment was in fact defective, and the takers in default of the power of appointment are determined, the rule giving creditors of the donee's estate preference to the appointees, gives them preference to those takers after a defective appointment. Northern Trust Co. v. Porter, 368 Ill 256, 266, 13 NE2d 487 (1938).

 For this court to speculate further and consider what would happen should the distribution provisions of Kathryn Breault's will be voided and the entire power of appointment be declared invalid, would only serve to subject petitioner's request for interim legal fees to an endless maze of imponderables. There is substantial authority which indicates that if Kath-

ryn's will were declared void, her trust property would pass to Oscar's estate, testate or intestate, as the case may be, since he was her only heir at the time of her death, and that therefore petitioner's fees would be payable out of Oscar's estate. Richardson v. Roney, 382 Ill 528, 537, 47 NE2d 714 (1943); Harrison v. Weatherby, 180 Ill 418, 444, 54 NE 237 (1899). But we do not seek to provide definite answers to those questions. The fact that there was a power of appointment established by the Kathryn Breault trust, and that this power was exercised in Oscar's will is sufficient to subject the appointive assets to payment of petitioner's fees when the estate's assets are inadequate. Petitioner's efforts were devoted to the preservation of both the original trust assets and their subsequent disposition under Oscar's will for which compensation is justified regardless of whether one or both testamentary dispositions are ultimately determined to be defective.

If Oscar's estate had sufficient assets there would have been no problem as to petitioner receiving his fees, since we hold that his services were rendered on behalf of the estate and in pursuance of the executor's statutory duty. The petitioner, therefore, should not go uncompensated because Oscar's estate is unable to pay fees when he was required by the Probate Act to and did render services almost exclusively beneficial to the nonprobate property.

Petitioner further urges that application of the principles of equitable contribution regarding services rendered on behalf of nonprobate property would further justify the entry of the trial order. 5 James, Ill Probate Law and Practice, 1962 Pocket Part, pp 110–114, contains a discussion of fees for legal services of an executor's attorney relating to "nonprobate" property, i. e. property that does not pass through the personal representative's hands. "Examples of such

assets include . . . property subject to a general power of appointment." p 110. The author points out that upon a property owner's death, his estate often consists of such nonprobate property, which casts upon the executor and his counsel many duties and responsibilities as part of the settlement of the estate. He states that section 337 of our Probate Act provides broadly for reasonable compensation to the representative's attorney without qualification as to whether performed in respect to probate or nonprobate property. Some states have adopted special statutes authorizing the probate court to order fees out of the nonprobate assets.

█ █ Since Illinois has no such statute, we believe an analysis of the principles of equitable contribution would be in order. Of course, fees incurred on behalf of the probate estate can never be assessed to the nonprobate assets if there is no benefit to such assets, and where the services are of benefit to both the probate and nonprobate assets, the fees would have to be apportioned. In the case at bar, however, the effectiveness of Oscar's testamentary disposition was essential to the disposition of the Kathryn Breault trust as established in Kathryn's will and, therefore, to uphold Oscar's will was to also defend Kathryn's testamentary trust. Oscar's estate was virtually worthless except insofar as his will attempted to appoint Kathryn's trust. There is thus no problem of apportioning certain fees separately on the grounds that certain services were of benefit *only* to Oscar's estate.

There is a growing body of law that the doctrine of equitable contribution extends to attorneys' fees for services rendered to an executor with respect to nonprobate assets. In Cloutier v. Lowie, 343 Mass 125, 177 NE2d 584 (1961), the Massachusetts Supreme Court considered the question where there was a probate estate of $4,656 and jointly held property of

$100,000. The attorney for the estate submitted a bill for fees to the executor for $4,500 which included services in making out returns for federal and state estate inheritance and other death taxes and settling such taxes. The probate judge found that the reasonable fee for legal services applicable to the probate estate was $500 and the balance "should fairly be charged to the joint property (p 585)." The court affirmed the decree as "entirely consistent with the state's policy of equitable contribution (p 586)."

Again, in the case of In re McKitricks Estate, 85 Ohio Law Abst 323, 172 NE2d 197 (1960), the question was whether attorney's fees incurred in handling a federal estate tax deficiency caused by the additional inclusion of property transferred in contemplation of death and certain joint property in the taxable estate of the decedent, were chargeable against the probate estate. It was there held that the benefits from the attorney's services inured solely to the beneficiary of the nonprobate property and the fees should be borne by said beneficiary. If the fees of the attorney had been paid by the executor, the estate would have been "entitled to reimbursement from the beneficiary."

The principle of equitable contribution, although not so refined in Illinois as in some other states, is well recognized and has been applied in a comparable situation. In Poiset v. Townsend, 166 Ill App 384, (1911) objection was made to the allowance of a claim against the estate of a husband on the grounds that the note on which the claim was founded was jointly signed and given for the purchase of property, title to which was taken in joint tenancy, and it was argued that payment would redound to the benefit of the surviving joint tenant rather than the estate. The court held that this circumstance would not deprive the owner of the note from proceeding against the estate of the deceased husband for the amount of the

note, but if the estate was required to pay it, "the administrator should then be required to proceed against the other joint maker for his contributive share (p 389)."

Heretofore, the primary obstacle to applying the doctrine of equitable contribution was the fact that the Probate Court lacked the power to assess fees against property not within the court's jurisdiction. The McKitrick case pointed out this lack of jurisdiction of the probate court to deal with the nonprobate property: "[O]nce this court has determined that the benefits from the attorney's services were performed for the benefit of beneficiaries of nonprobate property, the court has exhausted its probate jurisdiction to order contribution against the nonprobate beneficiaries (p 199)." But as of January 1, 1964, Illinois has replaced the limited jurisdiction of the Probate Court with the unified general jurisdiction of the Circuit Court pursuant to sec 9 of the New Judicial Article VI of the Illinois Constitution, granting to the circuit court "unlimited original jurisdiction of all justiciable matter." Moreover, Rule 14.2 of the Rules of the Circuit Court of Cook County, effective January 1, 1964, provides:

> Jurisdiction for any purpose which was not cognizable by the Probate Court prior to January 1, 1964 shall be invoked by the filing of a petition in the proceeding for the administration of the estate and by the issuance of process thereon as in other civil cases, except that jurisdiction as respects claims for personal injury, wrongful death or other tort shall be invoked as provided by Rule 14.16.

It is, therefore, apparent that the trial court, as the Probate Division of the new Circuit Court, had the

270

jurisdiction and authority to apply equitable principles and direct contribution in accordance therewith.

Respondents, further challenging the authority of the trial court, say: "(j)urisdiction over persons claiming an interest in the trust estate was sought to be obtained by notices to their attorneys. No process of the circuit court issued to interested persons, nor were the trust assets brought within the control of the court by surrender or process of the court."

The record before us indicates that answers to the petition were filed by the trustees of Kathryn's trust; respondents; and Estelle Breault and Kenneth Breault. The court appointed a special administrator to represent the estate on the petition for fees and, at its suggestion, letters were sent to counsel for all the parties involved, notifying them of the time and place of the hearing and inviting them to participate. Counsel for the trustees, respondents, the special administrator, Estelle Breault and two of the charities appeared at the hearing. A letter from counsel for the third charity was read to the court wherein counsel expressed the fact that they had not taken any active part in the probate proceedings, did not contemplate filing answer to the petition but were happy to cooperate to expedite the decision on the question of fees. In its order, the court stated that due and proper notice had been given to all interested parties and made a finding that it had jurisdiction of the parties and subject matter.

In Anderson v. Elliott, 1 Ill App2d 448, 453, 117 NE2d 876 (1954), the court held that: "As a general rule, all parties interested which would include cestuis que trustent, are necessary parties in suits by or against a trustee relating to the trust or its property. White v. Macqueen, 360 Ill 236, 243, 195 NE 832. However, because of the existence of numerous and varied in-

271

stances of exception, it has been said that 'whether beneficiaries should be made parties to a suit affecting the trust rests in the sound discretion of the court, and depends upon the facts and circumstances of each case' (Rothbart v. Metropolitan Trust Co., 307 Ill App 271, 279, 280, 30 NE2d 183) and that 'in general a trustee represents his cestuis que trustent in actions to which he is a party.' Campbell v. Abers, 313 Ill App 152, 167." The court held that where the absent parties are properly represented, that is, when in such case the trustee is made party to the suit affecting the cestuis' interest, they are as much bound by the decree rendered as if they were individually made parties thereto for the reason that their interests received actual and efficient protection. We find the court had the necessary parties properly before it and that respondent, under the circumstances, cannot complain that the court lacked jurisdiction. Furthermore, none of the other parties object.

We find no jurisdictional limitations upon the trial court as the Probate Division of the Circuit Court which prevented it from reaching the nonprobate assets, and no justifiable reason why petitioner should not be compensated. The rule that the appointive assets are treated as part of the donee's estate so far as necessary to pay the expenses of administration, and the doctrine of equitable contribution, in our opinion sustains the trial court's award of petitioner's fees out of the nonprobate assets.

Furthermore, we find substance in petitioner's additional contention that the duty to compensate for such services out of the nonprobate assets may often be quasi-contractual and binding on those benefited. Such quasi-contractual obligations are often founded upon a statutory, official, or customary duty, and

arise when the court seeks to uphold the fundamental principle that no one ought to enrich himself unjustly at the expense of another. 17 CJSO 574 sec 6; Keener, Law of Quasi-contracts p 16 (1893). "In the case of a contract implied in law no evidence of an express promise or of fact or circumstances—conduct—from which an intent to promise may be inferred, is necessary, for such contract does not rest on evidence of any promise. It can, however, never exist except where there is shown a plain duty and a consideration, which consideration may consist in a parting with something by the party seeking to enforce such implied contract. Intention is not sought for or regarded. The ordinary privity of contract is here unnecessary as the privity is regarded as existing through the relative duty or obligation. The necessary promise is conclusively presumed in order that there may not be a failure of justice. . . ." City of Chicago v. Pittsburg, C., C. & St. L. R. Co., 146 Ill App 403, 411 (1909).

For the reasons expressed herein we are of the opinion that the trial court did not err and its judgment is therefore affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.