# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Martin*, 2020 IL App (2d) 190140

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF LILLIE MARTIN, a Disabled Person (Tina Hiatt, Petitioner and Counterespondent-Appellee; Paul Martin, Respondent, Counterpetitioner, and Counterespondent-Appellee; Alan J. Martin, Respondent, Counterpetitioner, and Counterespondent-Appellant). |
| District & No. | Second District<br>Nos. 2-19-0140, 2-19-0830 cons. |
| Filed | July 14, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 2017-P-811; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Alan J. Martin, of Law Offices of Alan J. Martin, LLC, of Chicago, for appellant.<br><br>Mari Berlin and Nina Neuber, of Kabbe Law Group, LLC, of Naperville, for appellee Tina Hiatt.<br><br>No brief filed for other appellee.<br><br>Kelli M. Smith, of Law Office of Kelli M. Smith, P.C., of Naperville, guardian *ad litem*. |

Panel                       JUSTICE McLAREN delivered the judgment of the court, with
                            opinion.
                            Justices Zenoff and Hudson concurred in the judgment and opinion.


**OPINION**

¶ 1      This case arises from a guardianship dispute. Three siblings—petitioner, Tina Hiatt, and
counterpetitioners, Alan Martin and Paul Martin—all petitioned the trial court for guardianship
of the person and property of their mother, Lillian Martin (Lillie). Alan moved to disqualify
Tina's attorneys. The court appointed a guardian *ad litem* (GAL), but Lillie died before a
guardian was appointed. Tina, Alan, and Paul each filed a petition for attorney fees; Alan is an
attorney, and he represented himself during the proceedings. The court granted Tina's and
Paul's fee petitions and denied Alan's, and it ordered the approved fees to be paid from a
transfer-on-death (TOD) account.

¶ 2      Alan appeals, arguing that (1) the trial court lacked subject-matter jurisdiction to award
attorney fees because Lillie died before the court appointed a guardian, (2) the trial court erred
by ordering the approved attorney fees to be paid from a TOD account after Lillie died, (3) the
trial court erred by denying his motion to disqualify Tina's attorneys, and (4) the trial court
erred by denying his petition for *pro se* attorney fees. For the following reasons, we affirm in
part, reverse in part, and remand for further proceedings.


¶ 3                                    I. BACKGROUND
¶ 4      On July 5, 2013, Lillie submitted to a psychiatric-capacity evaluation. In a letter dated July
8, 2013, the psychiatrist who evaluated Lillie opined that she "has testamentary capacity to
compose a will and to understand and to sign legal documents."

¶ 5      Prior to November 2013, Lillie's trust provided that her estate would be divided equally
among Alan, Tina, and Paul. Alan had assisted his parents with legal issues for many years and
was Lillie's power of attorney for health care and for property.

¶ 6      In November 2013, Tina's attorney's law firm, Kabbe Law Group, LLC (Kabbe Law),
assisted Lillie in revoking her former estate plan and executing a new estate plan, with Tina
having power of attorney for health care and property. The new estate plan established a
revocable living trust and a pourover will. The revocable living trust named Lillie's three
children as beneficiaries, with Tina to receive 50%, Paul 25%, and Alan 25%.

¶ 7      Lillie had an investment account with UBS, a financial services company. The UBS
account was a TOD instrument, with equal shares designated to each sibling. Kabbe Law
advised Lillie to move her UBS account into her trust, but this did not occur because both Alan
and Tina represented themselves to UBS as Lillie's power of attorney. Therefore, the UBS
account remained a TOD.

¶ 8      In 2017, Tina, Paul, and Alan filed competing petitions to be appointed as guardian of
Lillie's person and estate. On August 10, 2017, Tina filed her original petition, alleging that
Lillie, born in 1930, had been diagnosed with dementia and mental impairment and that she
lacked sufficient understanding or capacity to make or communicate responsible decisions
regarding her care or to manage her estate or financial affairs. Tina stated that Lillie's

anticipated gross annual income was $10,500. On August 16, 2017, Tina amended her petition, which was essentially the same as the original petition but stated that Lillie's gross annual income was $20,100. On August 23, 2017, Tina mailed the required notice of her amended petition to Alan and Paul.

¶ 9        On September 8, 2017, the trial court appointed Kelly Smith as GAL for Lillie.

¶ 10        On October 4, 2017, Alan filed his appearance.

¶ 11        Paul and Alan separately filed counterpetitions for guardianship of Lillie on October 13, and December 20, 2017, respectively. Paul was represented by Michael Powers, and Alan represented himself.

¶ 12        On December 12, 2017, the GAL submitted her report to the court stating, in part, that Lillie "is able to tell you what she wants. On my last visit with Lillie on November 30, 2017, she repeatedly said 'I decide' and 'my mind is right.' She did say that if [she] cannot make decisions, then Tina is the person that she wants to make decisions for her."

¶ 13        On February 22, 2018, the court granted Alan's motion for Lillie's cancer treatment to be paid from the UBS account.

¶ 14        On March 1, 2018, Alan filed a motion to disqualify Tina's attorneys, Mari Berlin and her law firm, Kabbe Law (Tina's attorneys), and served Kabbe Law with extensive discovery requests.

¶ 15        On March 13, 2018, Kabbe Law filed a motion to quash subpoenas served by Alan. On March 30, 2018, Tina filed her response to Alan's motion to disqualify. Alan did not file a reply.

¶ 16        On April 10, 2018, the GAL filed a motion for the appointment of a third-party guardian of the person and estate of Lillie alleging that the three siblings had competing guardianship petitions, there were conflicting powers of attorney for health care and property, Alan had served the GAL with extensive discovery requests, and Alan had filed numerous and lengthy motions "that prolong[ed] this matter" and depleted Lillie's estate. On the same day, the GAL filed a petition for interim fees.

¶ 17        On April 16, 2018, Alan filed a combined motion seeking, *inter alia*, to obtain assisted living placement and authorization for funding for Lillie's medical care.

¶ 18        On May 14, 2018, Lillie died,[1] before the trial court could hear the competing petitions for her guardianship or hear Alan's motion to disqualify Tina's attorneys.

¶ 19        On June 4, 2018, Kabbe Law, as Tina's attorney, filed a petition for attorney fees incurred from August 4, 2017, to June 1, 2018, in the amount of $18,765.02. Tina had paid $10,000 to Kabbe Law, so the amount due was $8765.02. Tina contended that the amount owed should be paid from the UBS account before those funds would be distributed to the three siblings.

¶ 20        On June 25, 2018, the GAL filed a fee petition for the period of April 1, 2017 to August 17, 2018, in the amount of $9821.

¶ 21        On June 27, 2018, Alan filed a petition for *pro se* attorney fees and costs, in the amounts of $32,910 and $1506, respectively. The same day, Paul's attorney filed a petition for attorney fees and costs in the amounts of $4407.25 and $1060, respectively.

¶ 22        On June 28, 2018, the court approved the GAL's petition for interim fees.

---

[1]On May 18, 2018, a separate decedent probate case was opened (No. 2018-P-000563).

¶ 23    On July 12, 2018, Paul filed a response opposing Alan's petition for attorney fees. On July 13, 2018, Tina filed her own response opposing Alan's petition for attorney fees, arguing that an attorney is not entitled to fees for representing himself.

¶ 24    On July 13, 2018, Alan filed, *inter alia*, a response to the GAL's fee petition, arguing that the funds should not be taken from the UBS account. Also, on July 13, 2017, Alan filed his response to Kabbe Law's fee petition, opposing it.

¶ 25    On October 10, 2018, after hearing argument, the trial court dismissed the following pleadings, due to Lillie's death: (1) Alan's attorney fee petition, (2) Alan's motion to disqualify Tina's attorneys, (3) Kabbe Law's motion to quash a subpoena served by Alan, (4) Tina's motion to stay discovery, (5) the GAL's motion for the appointment of a third-party guardian of Lillie's person and estate; (6) Alan's motion to obtain assisted living placement and funding authorization for medical treatment; and (7) other pending nonfee motions.

¶ 26    Also on October 10, the trial court granted (1) Tina's motion to spread Lillie's death of record; (2) the GAL's motion for the payment of liabilities, ordering the approved amounts to be paid from the UBS account; (3) Tina's petition for attorney fees for Kabbe Law, approving the amount of $18,765.02 and ordering $8765.02 payable to Kabbe Law and $10,000 and $3115.50 payable to Tina, as reimbursement, all from the UBS account; and (4) Paul's attorney fee petition on behalf of Michael Powers in the amount of $5467.25, allocating $4407.25 to Paul, as reimbursement, and $1060 to Powers, both to be paid from the UBS account. Regarding the approved attorney fees to Tina's attorneys, the trial court stated, "the Court finds that the fees and costs are reasonable and for the benefit of the ward."

¶ 27    On November 8, 2018, Alan filed a motion to reconsider and to vacate the court's four orders of October 10, 2018, awarding attorney fees and designating the UBS account as the source of payment.

¶ 28    On November 20, 2018, the GAL filed another motion for the payment of liabilities, seeking liquidation of assets and alleging that when UBS was presented with the court's order for the payment of fees and costs, a UBS representative refused, explaining that UBS could not liquidate specific holdings without a court order or a decision by all three siblings.

¶ 29    On January 23, 2019, the trial court denied Alan's motion to reconsider and vacate the court's four orders of October 10, 2018 regarding attorney-fee awards and their payment from the UBS account.

¶ 30    On February 22, 2019, Alan filed a notice of appeal regarding the court's January 23, 2019, denial of his motion to reconsider and vacate the four "prior orders of" October 10, 2018.[2]

¶ 31    On March 6, 2019, the trial court granted the GAL's November 20, 2018, motion for the payment of liabilities, affirming the fees previously approved on October 10, 2018, to be paid from the UBS account, "first paid by cash and then paid by liquidating 'Calamos Growth Fund & Income Fund Class I' to the extent necessary."

¶ 32    On April 5, 2019, Alan filed a motion to vacate the court's March 6, 2019, order regarding the liquidation of assets. On August 23, 2019, the trial court ordered that Alan's motion to reconsider and vacate

> "is granted in part as to the parties' fully signed and court-filed agreed stipulations of August 1, 2019, (filed in both this case no. 2017-P-000811 and in case No. 2018-P-

---

[2]Appeal No. 2-19-0140.

0005653) which shall control and supercede [*sic*] the Court's March 6, 2019 order but otherwise is denied. No other matters being pending before this Court, this case stands closed."

¶ 33    The agreed stipulations referenced in the court's order provided that Tina and Paul would pay two-thirds of the GAL's fee award from their UBS shares and the remaining GAL fee award would be paid from the "Monarch Landing cash entrance deposit refund to the estate of Lillie Martin."

¶ 34    On September 23, 2019, Alan filed his second notice of appeal, regarding the orders dated August 23, 2019, March 6, 2019, and January 23, 2019.[3] This court consolidated the two appeals and dismissed the GAL from this appeal. We note that Paul has not filed a brief in this appeal.

¶ 35                                      II. ANALYSIS
¶ 36                              A. Trial Court's Jurisdiction
¶ 37    Alan argues that the trial court lacked subject-matter jurisdiction to award attorney fees because Lillie died before the court appointed a guardian. Alan contends that, once Lillie died, the "guardianship court's" jurisdiction was limited to the reasonable attorney fees of a "court-appointed guardian or a [GAL]."

¶ 38    Whether a circuit court has subject-matter jurisdiction to entertain a claim presents a question of law, which we review *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18. Subject-matter jurisdiction refers to a court's power " 'to hear and determine cases of the general class to which the proceeding in question belongs.' " (Internal quotation marks omitted.) *People v. Castleberry*, 2015 IL 116916, ¶ 12 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009)). "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *McCormick*, 2015 IL 118230, ¶ 19.

¶ 39    Under section 9 of article VI of the Illinois Constitution, the jurisdiction of circuit courts extends to all "justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office." Ill. Const. 1970, art. VI, § 9. So long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of the supreme court, the circuit court has subject-matter jurisdiction to consider it. See *M.W.*, 232 Ill. 2d at 424. A matter is considered justiciable when it presents "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

¶ 40    Regarding subject-matter jurisdiction, the supreme court has explained that "the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *In re Luis R.*, 239 Ill. 2d 295, 301 (2010). Even a defectively stated claim is sufficient to establish a circuit court's subject-matter jurisdiction if the claim falls within the general class of cases that the court has the inherent power to hear. *Id.*

_____
[3]Appeal No. 2-19-0830.

- 5 -

¶ 41    Compliance with a statutory requisite presents a different matter from whether a circuit court has subject-matter jurisdiction. See *McCormick*, 2015 IL 118230, ¶ 22. "Except when the proceeding is one for administrative review," a deviation from a statutory requirement does not divest the court of jurisdiction. *Id.* A circuit court's subject-matter jurisdiction over all justiciable matters is conferred by the Illinois Constitution and cannot be negated or divested by the failure to satisfy a certain statutory requirement or prerequisite. See *Castleberry*, 2015 IL 116916, ¶ 15; *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶¶ 27-40.

¶ 42    Here, Tina and Paul asserted claims for attorney fees under section 27-2(a) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/27-2(a) (West 2018)). That section authorizes reasonable compensation for an attorney's services for a representative. *Id.* The word representative is broad and is not limited to a court-appointed representative. *In re Estate of Roselli*, 70 Ill. App. 3d 116, 123 (1979). An attorney for a person seeking guardianship is entitled to attorney fees, whether his or her petition is successful or not. See *id.* Tina and Paul took positions adverse to Alan's on a question involving the parties' legal relations, namely whether Tina and Paul were entitled to attorney fees. The determination of whether Tina's and Paul's petitions should have been granted presented a justiciable matter. See *McCormick v. Robertson*, 2015 IL 118230, ¶ 28. Therefore, the petitions fell within the subject-matter jurisdiction of the trial court. See *id.*

¶ 43    Alan cites *In re Estate of Gebis*, 186 Ill. 2d 188 (1999), to support his argument. In *Gebis*, our supreme court limited a circuit court's jurisdiction where the "circuit court's power to act is controlled by statute." *Id.* at 193. The *Gebis* court reasoned, "[w]hen the circuit court's power to act is controlled by statute, the circuit court is governed by the rules of limited jurisdiction and must proceed within the statute's strictures." *Id.* However, *Gebis* relied on *In re M.M.*, 156 Ill. 2d 53 (1993), which was overruled regarding its subject-matter jurisdiction holding by three subsequent supreme court cases: *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 552-54 (2003), *Belleville Toyota, Inc.*, 199 Ill. 2d at 337, and *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 529-30 (2001). Therefore, Alan's citation to *Gebis* for the proposition that the trial court's subject-matter jurisdiction was limited by certain sections of the Probate Act fails. See *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1066 (2009).

¶ 44                    B. Payment of Attorney Fees From the UBS Account

¶ 45    Alan argues that the trial court erred by ordering the approved attorney fees to be paid from the UBS account because it had a TOD designation and Lillie had died. Tina argues that this issue is moot because the assets in the UBS account liquidated to cash without the need for the trial court's order.

¶ 46    An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. Generally, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 47    First, we note that the record does not support Tina's contention that the UBS account liquidated into cash. The record shows that, in March 2019, the UBS account held 13 mutual funds and $26,263 in cash, with a total market value of $457,846. The trial court ordered partial liquidation of one mutual fund to pay two-thirds of the GAL's fees.

¶ 48        Further, even if all of the assets in the UBS TOD account had been liquidated, that would not change the nature of the account. It was designated by Lillie as a TOD account with each sibling receiving a one-third interest upon Lillie's death. Thus, when Lillie died, Alan, Tina, and Paul became one-third owners of the UBS account, and until division of the account, they held "their interests as tenants in common." 815 ILCS 10/7 (West 2018). Therefore, Alan has an interest in the UBS TOD account and, thus, an actual controversy exists. Accordingly, the issue is not moot.

¶ 49        In addition, we determine that the trial court's order to pay Tina's and Paul's attorney fees from the UBS account was improper. Section 7 of the Uniform TOD Security Registration Act provides in relevant part:

> "On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners. On proof of death of all owners and compliance with any applicable requirements of the registering entity, a security registered in beneficiary form may be reregistered in the name of the beneficiary or beneficiaries who survived the death of all owners. Until division of the security after the death of all owners, multiple beneficiaries surviving the death of all owners hold their interests as tenants in common." *Id.*

¶ 50        Therefore, when Lillie died, the ownership of the UBS account passed to the siblings and was not part of Lillie's estate. Accordingly, the trial court erred by ordering attorney fees to be paid from the UBS account instead of from assets of Lillie's estate, if any.

¶ 51        Tina argues that the trial court had the authority to order attorney fees to be paid from the UBS account based on the doctrine of equitable contribution. Tina cites *In re Estate of Breault*, 63 Ill. App. 2d 246 (1965), for the following proposition: "Under the doctrine of equitable contribution, probate courts have the authority to order attorney's fees [to] be paid out of non-probate assets when the assets in the estate are insufficient." In *Breault*, the appellate court held that the trial court had the authority to order the executor's attorney fees to be paid out of trust assets as to which the decedent had the power of appointment. *Id.* at 260-61. Here, the UBS funds vested in the siblings. Further, in *Breault* there was some thread that could reasonably be connected to the trust assets (the executor's efforts were devoted to the preservation of both the original trust assets and their subsequent disposition under the heir's will, for which efforts compensation was justified). *Id.* at 267. Here, the attorneys' efforts were not connected to the preservation of the UBS assets. Thus, *Breault* is distinguishable from this case. In addition, to the extent that the attorney fees in *Breault* attached third-party funds, we disavow its holding.

¶ 52                                    C. Motion to Disqualify

¶ 53        Alan argues that the trial court erred by denying his motion to disqualify Tina's attorneys. Alan contends that his motion to disqualify was a threshold issue and that without resolution of such issue, the trial court erred by awarding attorney fees to Kabbe Law. Alan alleged a conflict due to Kabbe Law's prior relationship with Lillie, Tina, and an alleged unscrupulous relative. The trial court ruled that, due to Lillie's death, this issue became moot. We agree.

¶ 54        When Lillie died, there was no reason to appoint a guardian and, therefore, no reason to consider the appointment of any guardian regardless of a possible conflict. The issue of an appointment no longer existed, and therefore, any conflict dissipated with the issue. See *In re*

*Marriage of Donald B.*, 2014 IL 115463, ¶ 23.

¶ 55                                D. *Pro Se* Attorney Fees

¶ 56    Alan argues that the trial court erred by denying his petition for *pro se* attorney fees. Tina counters that the trial court properly denied Alan's petition because a *pro se* attorney is not entitled to attorney fees.

¶ 57    We first address our standard of review. Whether a court has authority to grant attorney fees is a question of law, which we review *de novo*. *Forest Preserve District v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 170680, ¶ 32. However, a court's decision whether to award authorized fees is reviewed for an abuse of discretion. *Id.*

¶ 58    Illinois has long followed the "American rule," which provides that each party must bear its own attorney fees and costs, absent statutory authority or a contractual agreement. *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 17. Here, attorney-fee claims are predicated on a statute, specifically, section 27-2(a) of the Probate Act (755 ILCS 5/27-2(a) (West 2018)). Because they are in derogation of the common law, statutes that allow for attorney fees must be strictly construed when determining what persons come within their operation. *My Pillow, Inc.*, 2018 IL 122487, ¶ 18. The construction of a statute is a question of law, reviewed *de novo*. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. When the language of a statute is clear and unambiguous, we must apply it as written, without resort to extrinsic sources to determine legislative intent. *Raab v. Frank*, 2019 IL 124641, ¶ 18.

¶ 59    The Probate Act's fee provision states: "The attorney for a representative is entitled to reasonable compensation for his services." 755 ILCS 5/27-2(a) (West 2018). The legislature did not intend to limit the word "representative" only to those persons legally appointed to act. The definition section of the Probate Act states that a " 'Representative' includes executor, administrator, administrator to collect, standby guardian, guardian and temporary guardian." *Id.* § 1-2.15. " '[T]he word representative is quite broad, meaning simply one who represents.' " (Internal quotation marks omitted.) *In re Estate of Byrd*, 227 Ill. App. 3d 632, 639 (1992) (quoting *Roselli*, 70 Ill. App. 3d at 123). An attorney for a person seeking guardianship is generally entitled to attorney fees without regard to whether the petition is successful. *Roselli*, 70 Ill. App. 3d at 123. Thus, the plain language of section 27-2(a) does not preclude an award of fees to a *pro se* attorney.

¶ 60    However, in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989), the supreme court held that, where, as here, the legislature has provided statutory authorization for an award of attorney fees, to the extent that a lawyer elects to proceed *pro se*, he or she has no attorney fees to claim and is not entitled to an award of fees under the statute. *Id.* at 62-63 (involving the fee-shifting provisions of Illinois's Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, ¶ 201 *et seq.*)). In denying the *pro se* attorney fees, the *Hamer* court reasoned that (1) "[a] lawyer representing himself or herself simply does not incur legal fees," so the anticipation of having to pay an attorney did "not present a barrier" to the *pro se* lawyer, as it would to a nonlawyer plaintiff; (2) an independent lawyer "encourag[es] citizens to seek legal advice before filing suit"; and (3) if a lawyer were permitted to represent himself or herself and collect fees, it could leave

the door open to unscrupulous attorneys who want only to generate fees. *Hamer*, 132 Ill. 2d at 62.

¶ 61 Appellate courts have applied the holding in *Hamer* in contexts beyond the FOIA, denying attorney fees to individual attorneys representing themselves in litigation. For example, in *My Pillow, Inc.*, 2018 IL 122487, ¶¶ 18, 28, the appellate court held that a relator who acts as his or her own attorney cannot seek attorney fees under the fee-shifting provision of the False Claims Act. Similarly, in *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 677-78 (2003), the appellate court held that a lawyer was not entitled to fees for self-representation in a malpractice action. In addition, in *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 117-18 (1990), the appellate court held that an individual attorney representing himself in a dissolution-of-marriage action was not entitled to recover attorney fees.

¶ 62 Further, we note that in *Kay v. Ehrler*, 499 U.S. 432 (1991), the United States Supreme Court held that a *pro se* attorney was not entitled to recover attorney fees under 42 U.S.C. § 1988 (1988), a federal civil-rights statute. The Court reasoned that awarding attorney fees to *pro se* attorneys "would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Kay*, 499 U.S. at 438.

¶ 63 Therefore, the line of precedent running through *Hamer* and its progeny leads directly to the case before us today and determines its outcome. Alan pursued the guardianship case and subsequent litigation *pro se*. Under the foregoing authority, Alan was therefore not entitled to an award of attorney fees, as a matter of law, for the services he performed in prosecuting his claim. See *My Pillow, Inc.*, 2018 IL 122487, ¶ 28; *Hamer*, 132 Ill. 2d at 62-63. Thus, the trial court did not abuse its discretion by denying Alan's petition for attorney fees.

¶ 64                                                 III. CONCLUSION

¶ 65 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for further proceedings regarding the payment of attorney fees from a source other than the UBS account.

¶ 66 Affirmed in part and reversed in part.
¶ 67 Cause remanded.