**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220116-U

Order filed December 31, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| ALAN J. MARTIN, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0116 |
| | ) | Circuit No. 20-CH-601 |
| KABBE LAW GROUP, LLC, MARI BERLIN, | ) | |
| TINA P. HIATT, PAUL G. MARTIN, and UBS | ) | |
| FINANCIAL SERVICES, INC., Defendants | ) | The Honorable |
| (Tina P. Hiatt and UBS Financial Services, Inc., | ) | Bonnie M. Wheaton |
| Defendants-Appellees). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The trial court did not err by: (1) granting the section 2-619 motions to dismiss with prejudice filed by two defendants; (2) denying a motion to strike an affidavit supporting one of the motions to dismiss; (3) refusing to reconsider and vacate its two dismissal orders; (4) denying the plaintiff's request for leave to file an amended complaint; and (5) awarding Supreme Court Rule 137 sanctions to one party and denying them to another.

¶ 2    Plaintiff Alan Martin filed a complaint in the Du Page County circuit court against Tina

Hiatt and UBS Financial Services, Inc., asserting numerous claims arising out of the handling

and distribution of a transfer-on-death account (TOD account) owned by his mother, Lillie Martin, prior to her death. After receiving several adverse rulings from the trial court, Alan filed the instant appeal. We now affirm those judgments.

¶ 3                                                I. BACKGROUND

¶ 4        In November 2013, Lillie opened a TOD account with UBS, with the account assets to be distributed equally among her children, Alan Martin, Tina Hiatt, and Paul Martin, after her death. The account was governed by terms found in UBS's transfer-on-death agreement (TOD agreement) and Client Agreement and Disclosures (Disclosures).

¶ 5        According to the TOD agreement, the account assets would be distributed after the beneficiaries provided certain documents: (1) an affidavit signed by all of them; (2) Lillie's death certificate; and (3) any required tax waivers. The TOD agreement stated that "in the event that UBS cannot determine *** the proper percentages to be applied to [a] transfer, or a dispute arises between any persons as to the proper transfer," UBS, "in its sole discretion, may restrict the Account as it deems appropriate, and may require the parties to adjudicate their respective rights" to the funds. Similarly, the Disclosures stated that "[UBS] may, in our sole discretion *** refuse to *** accept any instructions from you *** In our discretion, we may decline to effect transfers of Property to certain persons." In addition, the TOD agreement provided that "UBS shall be fully released and discharged from all liability upon payment to the Beneficiary or Beneficiaries." Those terms were contractually deemed to be "binding on [Lillie Martin's] estate, beneficiaries, heirs, legal estate representatives, successors and assigns." Lillie died on May 14, 2018, leading to numerous issues relating to the distribution of the estate assets.

¶ 6        Prior to Lillie's death, Tina filed a guardianship petition in August 2017. At that time, Tina was represented by attorney Mari Berlin, and her law firm, Kabbe Law Group, LLC. Alan

filed a motion to disqualify Berlin and Kabbe because they also represented Lillie, creating an alleged conflict of interest. Subsequently, Alan and Paul each filed his own guardianship petition. During the contest proceedings, the guardianship court appointed a guardian *ad litem* (GAL) for Lillie, but Lillie passed away before those proceedings could be completed. After Lillie's death, Tina's attorneys sought $18,765.02 in fees for representing her during the guardianship proceedings. Alan, who is an attorney, sought fees and costs for his *pro se* legal work totaling $34,416, and Paul's counsel sought fees of $5467. The GAL requested payment of $9821.

¶ 7        In settling the estate, the GAL, Alan, Tina, and Paul disagreed on how the TOD designation on the UBS account would affect the distribution of Lillie's assets. If the TOD account funds were not part of that estate, they could not be used to pay the GAL's attorney fees. Under that scenario, Alan would receive about a third of the TOD account assets. If, however, the TOD funds were part of Lillie's estate and were used to pay the GAL fees, Alan would receive only about a quarter of the account assets. In October 2018, the guardianship court ordered $47,638.65 in GAL fees to be paid from the TOD account, and Alan filed motions to reconsider and vacate, which were denied by the trial court, as well as a notice of appeal. In March 2019, the court granted injunctive relief to the guardian ad litem (GAL) and ordered that the TOD account be liquidated to pay the October 2018 fee award, prompting Alan to file a motion to reconsider.

¶ 8        During the pendency of Alan's earlier appeal of the October 2018 GAL fee order, Alan, Tina, and Paul began to negotiate a stipulation addressing the payment of those fees. UBS advised them that it would distribute the assets in the TOD account only after it received either an "executed copy" of the parties' stipulation or a court "order that states the account should be

3

paid out in accordance with the TOD [Agreement]." The beneficiaries ultimately signed a stipulation in June 2019. The stipulation required Tina and Paul to each pay a third of the GAL fees from their respective shares of the TOD account and Alan to pay the final third from his share of Lillie's estate but did not address how the remaining assets would be divided. After receiving a copy of the stipulation, UBS paid the GAL fees according to its terms in August 2019.

¶ 9        A few days later, on August 19, 2019, Alan filed a seven-count complaint in the Cook County circuit court, raising allegations related to the guardianship and probate proceedings. At the time of that filing, Alan's motion to reconsider the March 2019 order directing the liquidation of the TOD account, remained pending. In count 1 of his August 2019 complaint, Alan sought declaratory relief against UBS, Tina, and Paul. In counts 2 and 3, Alan alleged that UBS breached its contract and fiduciary duty. Count IV claimed that UBS violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act). Counts V and VI claimed that Berlin and Kabbe committed tortious interference with a contract. In the final count, Alan alleged that Tina breached the beneficiaries' contractual agreement. The case was transferred to the Du Page County Circuit Court in early 2020 on the grounds of *forum non conveniens*.

¶ 10        In July 2020, the Second District Court of Appeals held that the TOD designation on Lillie's UBS account was valid. Based on that guidance, UBS distributed the Assets consistent with its view of the TOD terms and the beneficiaries' stipulation. After Alan did not voluntarily withdraw his August 2019 complaint, Tina filed a motion to dismiss with prejudice pursuant to Code section 2-619 (735 ILCS 5/2-619 (West 2024)) in May 2021. In his response, Alan contended that Tina's motion did not present a requisite showing of affirmative matter sufficient to defeat the contract and settlement agreement that existed between them. For the reasons stated

4

on the record, the trial court granted Tina's motion to dismiss with prejudice on July 15, 2021. Alan filed an unsuccessful motion to reconsider and vacate, claiming that he had suffered damages when Tina breached their stipulated agreement by paying the guardianship fees from trust assets rather than from her share of the TOD account.

¶ 11 On April 21, 2021, UBS filed a combined motion to dismiss with prejudice the portion of Alan's complaint filed against it, citing sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2024)), and also sought sanctions under Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)). UBS contended that: (1) it was relieved from any liability after it distributed the account assets under the release provision in the TOD Agreement; (2) Alan could not assert a breach of the TOD Agreement because UBS had discretion to withhold a distribution under both the TOD Agreement and state law and, here, the beneficiaries had not previously taken the steps necessary to trigger a distribution; (3) the TOD Agreement precluded the imposition of a fiduciary duty on UBS; (4) the Fraud Act claims were barred because they replicated Alan's breach of contract claims and did not sufficiently allege a violation; and (5) Alan had suffered no damages because he had received his full share of the TOD account assets. In light of these claims, UBS's request for sanctions under Rule 137 asserted that Alan had repeatedly pursued frivolous legal actions against it.

¶ 12 Alan filed a response to UBS's dismissal motion and, in turn, sought sanctions against UBS in June 2021. He maintained that: (1) the version of the TOD Agreement attached to UBS's motion lacked foundation because it was not supported by a valid affidavit; (2) the TOD assets should have been distributed earlier because the beneficiaries did not dispute distribution after their mother's death; (3) applicable case law supported his allegations of breach of contract,

fiduciary duty, and Fraud Act violations; and (4) sanctions were proper against UBS due to its misconduct but were not supported by UBS's allegations against Alan.

¶ 13 UBS's reply included an affidavit submitted by UBS employee Adam Dozier that stated the applicability of the TOD Agreement and Disclosures terms to the case. UBS also sought leave to amend its motion to dismiss to correct an inaccurate document that was attached to the original motion by including the version of the Disclosures that applied before Lillie's passing. The trial court allowed UBS to amend its dismissal motion on July 19 and permitted Alan to file an amended response and UBS to file a reply supporting the newly amended motion.

¶ 14 In his response, Alan attached his response to the original motion and made several additional arguments, asserting that: (1) the trial court was required to accept the allegations in Alan's complaint as true even if they were contradicted by the TOD Agreement; (2) the TOD Agreement lacked a sufficient foundation; (3) the release of liability in the TOD Agreement was unenforceable because UBS did not perform its duties; (4) UBS should have distributed the account assets immediately after Lillie's death; and (5) the erroneous attachment in UBS's original dismissal motion warranted the imposition of sanctions.

¶ 15 UBS's reply argued that: (1) because Alan failed to include a counteraffidavit to Dozier's affidavit, the facts in the latter should be deemed to be admitted; (2) UBS was released from liability under the plain language of the TOD Agreement once it had distributed the account assets; (3) the terms of the TOD Agreement controlled over conflicting allegations in Alan's complaint, requiring a finding UBS that did not breach the TOD Agreement or owe Alan a fiduciary duty; (4) the Fraud Act claims were invalid because they merely duplicated Alan's contractual claims and no evidence established that the delay in payment by UBS was a deceptive act; (5) after receiving his share of the account assets, Alan could show no cognizable

6

damages; and (6) although Rule 137 sanctions against Alan were proper under the facts of the case, the imposition of sanctions against UBS would be unreasonable in the light of UBS's amended motion to dismiss, the foundation provided in the Dozier affidavit for the TOD Agreement, and UBS's correction of the minor error in the supporting document attached to its initial motion to dismiss that was cited in Alan's motion for sanctions.

¶ 16    Along with his response to UBS's amended motion to dismiss, Alan also sought to strike Dozier's affidavit, maintaining that the assertions that Dozier was familiar with UBS's account contracts and document retention policies were insufficient to establish that the TOD Agreement applied to the TOD account because case law required that inclusion of additional details. UBS's response noted that Dozier's affidavit was based on his personal knowledge and included specific facts to meet the requirements in Illinois Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)) and the applicable case law. Alan submitted a reply that largely reiterated his prior arguments.

¶ 17    After holding a hearing on Alan's motion to strike Dozier's affidavit and UBS's motion to dismiss on September 29, 2021, the trial court denied Alan's motion, stating "I believe that the affidavit of Mr. Dozier complies with Rule 191(a). Although it does not cover all of the things that Mr. Martin wishes it to cover, I believe that it is sufficient under the case law and under the requirements of 191(a)." The trial court also dismissed the counts against UBS in Alan's complaint with prejudice and awarded UBS sanctions pursuant to Rule 137. The court also denied Alan's motion for sanctions against UBS.

¶ 18    In its oral ruling, the trial court stated,

    "All right. Mr. Martin, you were incorrect when you said that the complaint must be taken as true on a 2-619. All well-pled allegations in the complaint must be taken as

7

true, and I believe that there were many allegations that were not well pled. Certainly the omission of the missing pages in the TOD agreement is a glaring fault, a glaring omission, and I believe that [UBS's] arguments are well taken. Even setting aside the validity of the full release on payment, I believe that the language in the terms and conditions, which were the subject of Mr. Dozier's affidavit, give UBS the discretion to withhold the distribution until certain conditions precedent are met. Those conditions precedent are the beneficiaries completing certain paperwork, and that was not done because Mr. Martin and his siblings were not in agreement and did not complete the paperwork.

It is explicit in the terms and conditions that there is no fiduciary duty between Lillie Martin and UBS. This is not a case in which there are allegations that there was some kind of self-dealing in the investments by UBS or that somehow they were negligent or UBS was negligent in making those investments. There is no fiduciary duty that arises to the beneficiaries if there is no fiduciary duty to Lillie Martin.

I think the -- it's quite clear that delayed payment is not subsumed under the Consumer Fraud Act under these particular circumstances. There is no statutory or contractual basis for the assessment of damages in this situation, and I believe that all of the arguments that [UBS] has made are convincing to the Court.

I will grant the motion -- the 2-619 motion with prejudice. I believe that the filing and persistence with this action is of such a nature that it is not well grounded in fact or law and that it is deserving of sanctions."

The trial court then allowed UBS to file a petition for attorney fees. The court's oral rulings were included in its written ruling issued on October 1, 2021.

8

¶ 19　　　　On November 16, 2021, Alan filed a motion seeking leave to amend his dismissed complaint, asserting that amendment was permissible because the dismissal orders were not final under Illinois Supreme Court Rule 304(a). UBS countered on December 1, 2021, arguing that: (1) the motion was untimely because the complaint had been dismissed with prejudice; (2) the resultant extension of the litigation would unnecessarily prejudice UBS; and (3) the proposed amendments would not cure the complaint's deficiencies. In her response, Tina contended that Alan was improperly seeking to add new theories and claims to his previously dismissed complaint without any statutory or factual support. Alan filed a reply to both UBS and Tina in January 2022, and a hearing was held on the outstanding motions on February 18.

¶ 20　　　　After that hearing, the trial court entered a final and appealable written order on February 24, 2022. In that order, the trial court denied Alan's motions to reconsider and vacate both of its prior dismissal orders and the denial of his request for Rule 137 sanctions, stating that Alan's reconsideration motion had neither alleged the misapplication of existing law nor cited any relevant new law or evidence. The trial court also denied Alan's motion for leave to amend his complaint, incorporating the reasons it stated on the record during the February 18 hearing. During that hearing, the court had stated that "there is a higher requirement for the filing of an amended complaint after a 2-619 dismissal. That dismissal was made with prejudice. I believe the original ruling was correct. You have not met the standards if indeed there are any standards for filing an amended complaint after a dismissal with prejudice." Finally, the trial court entered judgment on its prior sanctions award to UBS in the amount of $86,269.41 in attorney fees, having previously noted that a full hearing was unnecessary because the award was "punitive in nature." The court concluded that Alan's "improper pursuit of this action" justified the imposition of that sanction and that the fees were reasonable. Alan appealed.

¶ 21                                    II. ANALYSIS

¶ 22        On appeal, Alan asserts numerous issues arising out of the lengthy proceedings in the instant appeal: (1) whether the trial court erred in granting Tina's section 2-619 motion to dismiss with prejudice; (2) whether the trial court erred in granting UBS's amended section 2-619 motion to dismiss with prejudice; (3) whether the trial court erred in denying Alan's motion to strike Adam Dozier's affidavit and/or depose Dozier; (4) whether the trial court erred by refusing to vacate its prior dismissal orders; (5) whether the trial court improperly denied Alan's motion for leave to file an amended complaint; and (6) whether the trial court erred in granting UBS's motion for sanctions pursuant to Rule 137 and awarding it $86,269.41 in attorney fees while rejecting Alan's countermotion for Rule 137 sanctions against UBS.

¶ 23                        A. Rule 341 and Rule 375(a) Sanctions

¶ 24        Initially, Tina asks this court to strike substantial portions of Alan's appellate brief, or to impose other sanctions, due to extensive violations of Illinois Supreme Court Rules 341 (Ill. S. Ct. R. 341 (eff. October 1, 2020)), prescribing the requirements for appellate briefs, and 375(a) (Ill. S. Ct. R. 375(a) (eff. February 1, 1994)), permitting the imposition of sanctions for willful noncompliance with Illinois's appellate rules. While "Illinois Supreme Court rules are not suggestions; they have the force of law and must be followed" (*Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37), we do not believe that the violations here merit such extreme measures. Nonetheless, we strongly admonish Alan to adhere to the standards mandated by our Rules when appearing as appellate counsel in any future filings.

¶ 25                            B. Tina's Motion to Dismiss

¶ 26        Alan argues that Tina failed to carry her burden to show affirmative matter sufficient to avoid the legal effect of the beneficiaries' settlement agreement in seeking dismissal pursuant to

10

section 2-619(a)(9). The trial court dismissed Alan's breach of contract claim against Tina after finding that a breach was legally impossible because no valid contract existed based on a June 17, 2019, e-mail sent by Tina's then-counsel, Mari Berlin. In that e-mail, Berlin stated her client's agreement with two of the three terms proposed in the siblings' proposed settlement agreement but specifically stated Tina's disagreement with the final term, which required UBS to immediately distribute $7062.96 to Alan from the TOD account, due to a condition not being met. Alan maintains that a valid settlement contract was subsequently created, however, when he fulfilled that condition by signing a stipulation addressing the payment of the GAL's fees.

¶ 27　　　　The dismissal of Alan's claims against Tina with prejudice under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2024)) is reviewed *de novo*. *Alave v. City of Chicago*, 2023 IL 128602, ¶ 32. When reviewing a dismissal under section 2–619, we consider all pleadings and supporting documents in the light most favorable to the nonmovant. *Id*. An involuntary dismissal under that section is permitted if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2–619(a)(9) (West 1998). The "affirmative matter" required must be " 'something in the nature of a defense which negates the cause of action completely' ". *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367–68 (2003) (quoting *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994)). The absence of a valid contract would, of course, necessarily bar the prosecution of a breach of contract claim and support the grant of a motion to dismiss under section 2-619.

¶ 28　　　　Our supreme court has explained that any attempt to resurrect a rejected offer is legally ineffective and does not create a valid contract.

　　　　"Pursuant to traditional principles of contract, the legal effect of a counteroffer is the

　　　　rejection of a standing offer. *Sharp Electronics Corp. v. Deutsche Financial Services*

11

*Corp.*, 216 F.3d 388, 395–96 (4th Cir. 2000), citing Restatement (Second) of Contracts § 36 (1981). A rejected offer cannot be revived by a later acceptance. See *Sementa v. Tylman*, 230 Ill. App. 3d 701, 705 (1992); *D'Agostino v. Bank of Ravenswood*, 205 Ill. App. 3d 898, 902 (1990); *Sharp Electronics Corp.*, 216 F.3d at 396. When a defendant rejects a State offer, the parties go 'back to the drawing board.' *Coleman* [*v. United States*] 318 F.3d [754,] 759 [(7th Cir. 2003)]." *People v. Henderson*, 211 Ill. 2d 90, 103-04 (2004).

¶ 29    Here, the e-mail submitted to Alan on June 17, 2019, by Tina's then-counsel, Berlin, expressly rejected the settlement agreement that had been proposed between the siblings. Although Tina accepted two of the three terms included in that proposal, her acceptance of those terms was "subject to check of math/calculations." Moreover, she explicitly rejected the final term, which would have immediately distributed over $7000 from the TOD account to Alan. As stated in Berlin's e-mail, the third term was

> "NOT agreed until we have a stipulation re [the GAL's] remaining 1/3. We agree to the above two actions on the account (non-cash distributions in 1/3's and distributions of Tina and Paul's 1/3's of the cash), but we do not agree to the distribution of any of Alan Martin's 1/3 of the cash to Alan Martin until the stipulation is signed."

¶ 30    When read as a whole, that e-mail makes it clear that Tina did not accept the proposed settlement, and, instead, made a counteroffer stating that she accepted the first two terms once the calculations involved were checked for accuracy and that she would only accept the proposed third term after the stipulation was signed by all parties. Although Alan claims that his subsequent signing of the stipulation effectively created an enforceable contract, that claim is not supported by the law as stated by our supreme court in *Henderson*, 211 Ill. 2d at 103-04. Instead,

12

Tina's counteroffer sent the parties " 'back to the drawing board' " (*id*.) and again required them to mutually agree to all the proposed settlement terms. "There is no acceptance, however, until the offeree notifies the offeror of the acceptance or at least employs reasonable diligence in attempting to do so. (Restatement (Second) of Contracts § 56 (1981); *Rothenbuecher v. Tockstein*, 88 Ill. App. 3d 968, 970 (1980); *City of Chicago v. Northwestern Mutual Life Insurance Co.*, 120 Ill. App. 497, 499 (1905).)." *Sementa v. Tylman*, 230 Ill. App. 3d 701, 705 (1992).

¶ 31    Subsequent e-mails exchanged between the law offices of Alan and Berlin confirm that the stipulation was not fully executed as of June 25. At a minimum, Tina had not yet signed the stipulation at that time. An e-mail sent by Alan's law office to Berlin on June 25 agreed "to [Berlin's] requested extension [for signing] until noon tomorrow." That e-mail also stated, "That will be the last and final extension. Unless all parties sign and send back to us the agreed stipulations by noon tomorrow, we will be done and no longer will spend any more time and effort on this." It is undisputed that Tina did not sign the stipulation the next day, leaving the condition in the counteroffer that the stipulation be executed by the parties unfulfilled. Because all the terms in Alan's proposed settlement agreement were not agreed to by Tina, no enforceable contract was created. Under those circumstances, the trial court did not err in dismissing Alan's breach of contract claim due to the absence of a valid settlement agreement.

¶ 32    C. UBS's Motion to Dismiss & Alan's Motion to Strike Affidavit

¶ 33    Next, Alan contends that the trial court erred by granting UBS's combined motion to dismiss the four counts filed against it (I-IV) with prejudice pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2024)) as well as its request for sanctions pursuant to Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)). In a related claim, he argues

13

that the trial court erred by denying his motion to strike the Dozier affidavit submitted with UBS's motion to dismiss. We review those rulings *de novo*. *Alave*, 2023 IL 128602, ¶ 32.

¶ 34       Alan first asserts that UBS failed to fulfill the affidavit requirement in Supreme Court Rule 191(a), which required submission of a valid affidavit to verify and attest to the veracity of the two documents attached to its section 2-619(a)(9) dismissal motion. He contends that UBS was unable to make the requisite showing when one document, a "booklet containing agreements and disclosures applicable to [Lillie Martin's] account and required by federal law" (Disclosures), was inapplicable to her TOD account because it was created after her death, and the other document, a copy of UBS's "Transfer on Death Registration and Agreement" (TOD Agreement), was a blank 6-page copy not executed by Lillie. Alan maintains that his complaint contained the correct version of the TOD Agreement because he attached the completed 3-page version that had been signed by Lillie. Alan asserts that the Dozier affidavit filed by UBS was invalid because it failed to comply with the requirements in Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)).

¶ 35       The record reveals that, after filing its initial dismissal motion in April 2021, UBS sought leave to file an amended motion in July 2021. In that motion, UBS acknowledged that it had "unintentionally and inadvertently attached and relied on the wrong version of [the Disclosures]" to its prior dismissal motion. UBS sought to correct that error by attaching the proper exhibit to its amended motion to dismiss. UBS asserted that "[t]he language in the corrected Exhibit B, while not identical to the language quoted in the Motion to Dismiss, is materially the same." It summarized the relevant differences between the two documents in a table:

| Language from Exhibit B Quoted in Motion to Dismiss | Language from Corrected Exhibit B Quoted in Revised Motion to Dismiss |
|---|---|

14

| | |
|---|---|
| "[UBS] may, in our sole discretion…prohibit or restrict disbursements from your Account" for various reasons, including "if we receive notice of an impending or current legal action related to the assets in your Account that leads us to have reasonable uncertainty about the proper ownership of the assets in your Account." (Ex. B at 16) (Page 3 and 7 of Motion to Dismiss) | "[UBS] may, in our sole discretion, with or without prior notice, prohibit or restrict trading of securities or substitution of securities in your Account and refuse to enter into any transactions with you or accept any instructions from you…In our discretion, we may decline to effect transfers of Property to certain persons or countries." (Corrected Ex. B at 11) |
| "[i]n no event shall UBS…be liable to you for any reason for: (a) any indirect special, indirect, consequential, punitive or exemplary losses or damages arising out of your agreements with us." (Ex. B at 13) (Page 4 and 9 of Motion to Dismiss) | "UBS, our officers, directors, employees and agents shall not be liable to you for any reason for consequential damages arising out of your Agreement with us and/or any services we provide to you." (Corrected Ex. B at 9) |
| "When UBS acts as a broker-dealer…UBS does not act as a 'fiduciary.'" (Ex. B at 5) (Page 7 of Motion to Dismiss) | "When we act as your broker-dealer, we do not enter into a fiduciary relationship with you." (Corrected Ex. B at 3) |

UBS also made changes in the argument portion of its amended motion to dismiss to reflect the variation in language between the two versions of the Disclosure.

¶ 36 Rule 191(a) requires that affidavits supporting a section 2-619 dismissal motion "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

An affidavit fulfills the requirements of Rule 191(a) if, " 'from the document as a whole, it appears the affidavit [is based upon] the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial.' " *Kero v.*

15

*Palacios*, 2018 IL App (1st) 172427, ¶ 27 (quoting *Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund*, 2015 IL App (1st) 141690, ¶ 16).

¶ 37    Here, Dozier attached an affidavit to the reply memorandum filed in support of UBS's motion to dismiss. In that affidavit, Dozier stated that he had been a director and counsel at UBS since 2015 and was

> "responsible for managing various legal issues for UBS AG and UBS-FS, including issues related to contracts and agreements applicable to accounts opened by clients of UBS-FS. As a result, I am familiar with UBS-FS's document retention practices and applicable policies and procedures, and UBS-FS's system for maintaining current and historic account opening documents, contracts and agreements."

¶ 38    While acting in those roles for UBS, Dozier reviewed the attachments to Alan's complaint and determined that he had failed to attach

> "a full copy of the UBS Transfer on Death Registration and Agreement because it does not include the entirety of the Transfer on Death Registration and Agreement, including the Terms and Conditions of Transfer on Death Service, which are referenced on page 1 of Dozier Affidavit Exhibit 1."

In addition, Dozier stated that he had "located a full copy of the UBS Transfer on Death Registration and Agreement, including the Terms and Conditions of Transfer on Death Service, which was in effect on November 4, 2013, which is attached hereto as Dozier Affidavit Exhibit 2," as well as "a full copy of the Agreements and Disclosures applicable to UBS-FS Transfer on Death Accounts that were in effect on November 4, 2013, which are attached hereto as Dozier Affidavit Exhibit 3."

16

¶ 39        We conclude that the Dozier affidavit met the requirements of Rule 191(a). Although

Alan maintains that Dozier did not have personal knowledge of the documents because he did

not become director and counsel at UBS until two years after the TOD account was created, he

cites no legal authority for that assertion Indeed, requiring an affiant to have been employed at

the time an agreement was entered into would be highly impracticable in a multitude of cases.

Employees routinely come and go from companies, and lawsuits often involve documents that

were executed many years or even decades earlier, making it virtually impossible to ensure that

an affidavit could be obtained from someone employed at the time the agreement came into

effect. We decline to impose that requirement now.

¶ 40        The affidavit establishes that Dozier's statements were based on his personal knowledge

of UBS's business records as its director and counsel. We conclude that UBS has "affirmatively

show[ed] that the affiant, if sworn as a witness, can testify competently thereto" because the

statements were based on Dozier's personal review of the relevant records. The affidavit also

stated facts that could be admitted into evidence, not mere conclusions, and we conclude that

those facts supported UBS's defense with sufficient particularity, with additional support coming

from the copies of the relevant account documents that were attached to the affidavit. Although

the six-page TOD Agreement attached by Dozier was not signed by Lillie, it is readily apparent

from the record that the three-page version of that document submitted by Alan was not the

entirety of the parties' agreement. The page numbering on Alan's submission reveals that those

three pages were, in fact, part of a document with a total of six pages, such as the version

submitted by UBS.

¶ 41        Moreover, the three-page version signed by Lillie included the statement that, "I

acknowledge and agree to be bound by all of the terms and conditions for the TOD service at

17

UBS, and that I have received and read a copy of the *Transfer on Death Registration and Agreement*." (Emphasis added.) In turn, the attachment to UBS's filing shows that the "Transfer on Death Registration and Agreement" constituted the final three pages of the parties' full TOD Agreement submitted by UBS. Thus, Alan's signed, but incomplete, version of the TOD Agreement supported UBS's position because it expressly acknowledged Lillie's agreement to be bound by those additional provisions. For those reasons, the trial court properly considered those documents in ruling on UBS's motion to dismiss. See *Kirschenbaum v. Northwestern University,* 312 Ill. App. 3d 1017, 1029 (1999) (stating "[c]ontracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents"). Accordingly, we reject Alan's claim that UBS failed to fulfill the requirements of Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)) and affirm the trial court's denial of his motion to strike Dozier's affidavit as improper.

¶ 42 Alan next contends that UBS's section 2-619 motion failed because it disputed the sufficiency of the complaint even though a section 2-619 motion "necessarily admitted the sufficiency of the claims pled against UBS." He adds that UBS's supporting claims were also factually inaccurate, including the claim that UBS could not distribute the majority of the account funds to the beneficiaries earlier because the necessary paperwork had not yet been completed.

¶ 43 " 'The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation.' *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Section 2-619(a)(9) allows involuntary dismissal where 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' 735 ILCS 5/2-619(a)(9) (West 2018). ' " '[A]ffirmative matter,' in a section 2-

18

619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." ' *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994)." *Alave v. City of Chicago*, 2023 IL 128602, ¶¶ 32-34.

¶ 44    Here, the trial court considered virtually the same arguments that Alan now raises on appeal. After acknowledging that all well-pleaded facts had to be admitted as true, it concluded that "there were many allegations that were not well pled," specifically citing "the omission of the missing pages in the TOD agreement" as "a glaring fault, a glaring omission." The trial court also considered "the language in the terms and conditions, which were the subject of Mr. Dozier's affidavit."

¶ 45    Under the TOD Agreement, Lillie agreed

"that UBS, in its sole discretion, may restrict the Account as it deems appropriate, and may require the parties to adjudicate their respective rights in the TOD Account Assets, or to require an indemnification satisfactory to UBS before making any transfer pursuant to this Agreement in the event that:

UBS cannot determine the person or persons entitled to receive a transfer pursuant to this Agreement, or the proper percentages to be applied to such transfer, or

Before UBS makes a transfer pursuant to this Agreement a dispute arises between any persons as to the proper transfer, or between or among any creditors of the Account Owner".

¶ 46    The corrected Disclosure submitted by UBS contained similar language, granting it discretion to bar transactions that it believed to be improper and protecting it from any liability for consequential damages. In part, those provisions stated that

"*[UBS] may, in our sole discretion,* with or without prior notice, prohibit or restrict trading of securities or substitution of securities in your Account and *refuse to enter into any transactions with you or accept any instructions from you.* \*\*\* In our discretion, we may decline to effect transfers of Property to certain persons or countries." Emphases added.

In another section the Disclosure stated, "UBS, our officers, directors, employees and agents shall not be liable to you for any reason for consequential damages arising out of your Agreement with us and/or any services we provide to you." In addition, the TOD agreement provided that "UBS shall be fully released and discharged from all liability upon payment to the Beneficiary or Beneficiaries." Although that agreement was entered into by Lillie, Alan does not cite any legal authority granting him, as a beneficiary, greater rights to damages than that possessed by Lillie, the owner of the account.

¶ 47        After examining the contract language, we agree with the trial court that it "[gave] UBS the discretion to withhold the distribution until certain conditions precedent are met. Those conditions precedent are the beneficiaries completing certain paperwork, and that was not done because Mr. Martin and his siblings were not in agreement and did not complete the paperwork." Indeed, the record on appeal is replete with multiple disputes and legal proceedings involving Lillie's estate, clearly showing the ongoing legal schism between the siblings about how to proceed with the distribution of Lillie's TOD assets. For instance, as we previously concluded, the record fails to support Alan's claim that the siblings had executed a valid settlement agreement regarding the distribution of at least a portion of the TOD funds. *Supra* ¶¶ 24-29. The documents provided by the parties precluded Alan's cause of action against UBS by " 'refut[ing]

20

crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint.' " *Alave*, 2023 IL 128602, ¶ 34 (quoting *Illinois Graphics Co.*, 159 Ill. 2d at 486).

¶ 48                    D. Vacatur of the Dismissal Orders

¶ 49        Alan also argues that the trial court erred by denying his motion to reconsider and vacate the orders dismissing the counts filed against Tina and UBS. An appeal from a dismissal pursuant to section 2-619 "is the same in nature as one following a grant of summary judgment and is likewise a matter given to *de novo* review." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 50        In its oral ruling denying Alan's request to vacate its prior dismissal orders, the trial court succinctly explained its rationale. The court noted that Alan failed to allege a misapplication of existing law, cite new law, or offer new evidence that was not available at the time the motions were argued. Because Alan had failed to offer a sufficient basis for modifying the prior rulings, the trial court denied Alan's motions to reconsider and vacate the dismissal orders.

¶ 51        After reviewing the relevant portions of the record and the parties' arguments, we agree with the trial court that Alan presented no new legal basis or extension or misapplication of existing law to support the reinstatement of the dismissed counts. In addition, the "new" evidence on which he attempted to rely was available to him when the dismissal motions were considered and cannot now be belatedly raised to provide a second bite at the apple. See *Spencer v. Wayner*, 2017 IL App (2d) 160801, ¶ 26 (upholding finding the trial court properly refused to consider evidence supporting a motion to reconsider when it was available when the summary judgment motion was originally heard).

¶ 52        The evidence offered to support Alan's request to vacate consisted of: (1) emails from 2018 and 2019 pertaining to UBS's policy of distributing assets when not all required paperwork

21

was completed and to Tina's request for a beneficiary form UBS allegedly "had on file;" (2) portions of the pleadings in a related case that was filed prior to October 2020; (3) documents attached to UBS's 2021 original and amended motions to dismiss; and (4) an October 2021 letter from Tina's counsel providing Alan with an "Inventory and Second Annual Accounting of the Trust." With the exception of the October 2021 letter, all the proffered evidence was available to Alan prior to the hearings on the motions to dismiss, and he has not disputed its prior availability. Moreover, the October 2021 letter fails to provide any new information sufficient to merit the denial of the dismissal motions. Accordingly, we affirm the trial court's denial of Alan's motions to reconsider and vacate the order dismissing the counts filed against Tina and UBS. See *id.*

¶ 53                    E. Denial of Leave to File an Amended Complaint

¶ 54        Alan next appeals the denial of his request to file an amended complaint. We may reverse a ruling on a motion for leave to file an amended complaint only if it was a clear abuse of the trial court's discretion. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351 (2002).

¶ 55        Alan argues that the trial court abused its discretion because his proposed amended complaint satisfied each of the four factors cited in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Those four factors are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Id.*

¶ 56        We do not reach that test, however, unless the proposed amendment is first found to be permissible under section 2-616 (735 ILCS 5/2-616 (West 2022)), which governs the filing of amended pleadings. Subsection 2-616(a) states, in relevant part, that "*[a]t any time before final*

22

*judgment* amendments may be allowed on just and reasonable terms \*\*\* which may enable the plaintiff to sustain the claim for which it was intended to be brought." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2022). Thus, the initial question in determining whether an amendment should be granted is whether it was sought *before* entry of a final judgment. Here, Alan did not seek leave to amend his complaint until after final judgments were entered dismissing the counts filed against Tina and UBS with prejudice.

¶ 57    Those dismissal orders constituted final judgments because they "terminate[d] the litigation and fix[ed] absolutely the parties' rights, leaving only enforcement of the judgment." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24. Simply put, once those orders were entered, Tina and UBS were no longer subject to prosecution under those counts of Alan's complaint. Although the trial court could have delayed the finality of those orders by simultaneously granting Alan leave to file an amended complaint, it did not. See *id*. ¶ 25 (stating that "[a]n order that dismisses the counts of a complaint, but grants the plaintiff leave to amend, is not 'final' because the order does not terminate the litigation between the parties"). As the *Richter* court recognized, " 'Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.' " *Id*. ¶ 24 (quoting Rule 273). "[F]or purposes of Rule 273, where a dismissal order does not specify that it is 'without prejudice,' or that plaintiff was granted leave to file an amended complaint, *the dismissal order is a final adjudication on the merits*." (Emphasis added.) *Id*. ¶ 25. Because the dismissal orders here constitute final orders, the trial court did not abuse its discretion by denying Alan's subsequent motion for leave to file an amended complaint.

¶ 58                               F. Rule 137 Sanctions

23

¶ 59    Lastly, Alan asserts that the trial court erred by granting UBS's motion seeking sanctions under Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)) against him and denying his motion for those same sanctions against UBS. Rulings on motions for sanctions are reviewed for an abuse of the trial court's discretion, and an abuse of discretion will be found only if no reasonable person would agree with the trial court's decision. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16.

¶ 60    In its sanctions motion, UBS argued that Alan violated Rule 137 by continuing to pursue frivolous claims in his complaint against UBS "[d]espite already receiving the entirety of his portion of the Assets, the same relief Martin" claimed to be seeking. Because his frivolous action "needlessly wasted the Court's and parties' resources," UBS maintained that it merited the imposition of sanctions.

¶ 61    Rule 137(a) mandates that

> "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

The Rule "is designed to discourage frivolous filings," and "[i]mplicit in this rule is a requirement that an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded" or face the prospect of sanctions. (Internal quotation marks omitted.) *Lake Environmental*, 2015 IL 118110, ¶¶ 13, 15 (quoting *American Service Insurance v. Miller*, 2014

24

IL App (5th) 130582, ¶ 13 (quoting *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001))). If a court determine that sanctions are warranted, "the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018).

¶ 62    Here, the trial court concluded that Alan's complaint contained "many allegations that were not well pled. Certainly, the omission of the missing pages in the TOD agreement is a glaring fault, a glaring omission." After reviewing the parties' arguments, the trial court found Alan's legal reasoning unsupported while UBS's arguments "[were] well taken." It also found that "all of the arguments that [UBS] has made are convincing to the Court." The court subsequently stated its belief "that the filing and persistence with this action is of such a nature that it is not well grounded in fact or law and that it is deserving of sanctions" before it set a hearing on UBS's forthcoming fee petition. Although the trial court's statement of its rationale was certainly not exemplary, it was sufficiently specific to avoid reversal by this court. See *Lake Environmental*, 2015 IL 118110, ¶ 16 (explaining that "it is clear that the appellate court ought to focus on whether the record provides an adequate basis for upholding the circuit court's decision to deny sanctions, not on the circuit court's specific reasons for doing so").

¶ 63    Attached to its fee petition, UBS included an affidavit, sworn by its counsel, that detailed the fees requested, the rates charged, and various other facts pertaining to the reasonableness of its fee request; Alan did not file a counteraffidavit but did note that the billing records submitted contained numerous redactions. We conclude that the redactions in the records were intended to protect confidentiality and not for any improper purpose. After considering that affidavit, as well as the billing records submitted, the trial court expressly approved the hourly fee rate charged and found that UBS "adequately demonstrate[] that all of the fees and costs which are being

25

sought are *** related to the litigation at issue before the Court, and as such, *** that it is appropriate to award the fees incurred by UBS because of the improper pursuit of this action." Our review of UBS's fee petition and supporting documents yields a similar conclusion. The fee award imposed by the trial court was not an abuse of its discretion such that no reasonable person could agree with it.

Finally, we turn to the trial court's denial of Alan's countermotion for Rule 137 sanctions against UBS. Alan contended that UBS had filed pleadings that were "not well-grounded legally and that attach unfounded and even false documents that UBS knew, or should have known, were inaccurate and not properly to be submitted to the Court." He adds that UBS never explained how the wrong version of the Disclosures was erroneously attached to its original motion to dismiss. He maintains that, taken together, those actions merit the imposition of Rule 137 sanctions under *Lake Environmental*.

¶ 64        UBS counters that, by proceeding *pro* se throughout this litigation, Alan was not entitled to any award of attorney fees, despite being a licensed Illinois attorney. UBS notes that the appellate court has previously reached that conclusion in *In re Estate of Martin*, 2020 IL App (2d) 190140, where the court denied Alan's fee request in an appeal that addressed matters connected to the instant proceedings.

¶ 65        In *Estate of Martin*, the appellate court relied on our supreme court's analysis in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989). There, the supreme court held that an attorney who proceeds *pro se* in a matter where statutory fees are authorized is not entitled to a fee award. *Id*. at 62-63. The court cited a number of supporting rationales: (1) a *pro se* attorney does not incur any legal fees; (2) "an independent lawyer 'encourag[es] citizens to seek legal advice before filing suit' "; and (3) a contrary result "could leave the door open to unscrupulous attorneys who want only to

26

generate fees." *Id*. at 62. UBS notes that other courts, including the United States Supreme Court, have applied similar analyses beyond the context of the statutory claims at issue in *Hamer*. *Estate of Martin*, 2020 IL App (2d) 190140, ¶¶ 61-63.

¶ 66 Applying that line of cases, the court in *Estate of Martin* concluded that "Alan was therefore not entitled to an award of attorney fees, as a matter of law, for the services he performed in prosecuting his claim. [Citations.] Thus, the trial court did not abuse its discretion by denying Alan's petition for attorney fees." *Id*. ¶ 63. We now adopt that same rationale and hold that the trial court's denial of Alan's request for attorney fees was not an abuse of its sound discretion.

¶ 67                                     III. CONCLUSION

¶ 68 For the reasons stated, we  affirm the judgments entered by the Du Page County circuit court.

¶ 69 Affirmed.